UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN COMBS, | : | CIVIL NO: 3:24-cv-1521 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Magistrate Judge Schwab) |
| | : | |
| | : | |
| JAMES PETRUCCI, *et. al.*; | : | |
| | : | |
| Defendants. | : | |

## **REPORT AND RECOMMENDATION**

### I. Introduction.

The plaintiff, Kevin Combs ("Combs"), proceeding pro se, raises claims pursuant to 42 U.S.C. § 1983 related to the search of his person and car and his subsequent criminal proceedings. Defendant Lackawanna County and defendants City of Scranton, James Petrucci ("Petrucci") and Jason Hyler ("Hyler") (together, the "City Defendants") have moved to dismiss Combs's complaint pursuant to Fed. R. Civ. P. 12(b)(6). *Docs. 12, 18*. We recommend that Lackawanna County's motion to dismiss be granted, and the City Defendants' motion to dismiss be granted in part and denied in part. We further recommend that Combs be granted leave to file an amended complaint.

## II.  Background and Procedural History.

Combs commenced this civil action via a complaint on September 9, 2024, against Petrucci, Hyler, John Doe/ Scranton Police Chief, John Doe/ Scranton Internal Affairs Officer, Lackawanna County, and City of Scranton. *Doc. 1*.  After being served, Lackawanna County filed a motion to dismiss Combs's complaint (*doc. 12*) and a brief in support thereof (*doc. 13*).[1]  On January 10, 2025, the City Defendants filed a motion for an extension of time to file a responsive pleading *nunc pro tunc* (*doc. 17*), along with a motion to dismiss (*doc. 18*).  After we granted the City Defendants' motion for extension of time (*doc. 19*) they filed a

---

[1] In Lackawanna County's motion to dismiss, filed by Attorney Michael R. Goffer ("Attorney Goffer"), the first line reads:

> AND NOW comes the Defendants, Lackawanna County, City of Scranton, John Doe Scranton Police Chief, John Doe Scranton Internal Affairs Officer, James Petrucci Scranton Police Officer and Jason Hyler Scranton Police Officer, by and through their counsel, Law Office of Goffer & Cimini hereby files this Motion to Dismiss as follows[.]

*Doc. 12* at 1.  But the motion and brief in support thereof only argue for the dismissal of claims against Lackawanna County. *See docs. 12, 13*.  And another attorney filed an appearance on behalf of the City Defendants. *Doc. 10*.  We, therefore, ordered Attorney Goffer to file a letter on the docket clarifying which party or parties he represents. *Doc. 28*.  He did so and stated that he "represent[s] solely the interest of Lackawanna County in this matter[.]" *Doc. 29*.

motion to exceed the page limitation (*doc. 20*), which we granted (*doc. 21*).  They then filed a brief in support of their motion to dismiss. *Doc. 22*.[2]

On February 21, 2025, Combs filed a motion for extension of time to file a response to both pending motions to dismiss and noted that he had not been served with a copy of Lackawanna County's motion to dismiss or brief in support. *Doc. 24*.  On February 24, 2025, we granted Combs's motion and ordered Lackawanna County to immediately and properly send copies of its motion to dismiss and brief in support thereof to Combs. *Doc. 25*.

Thus, Combs's briefs in opposition to the two motions to dismiss were due on March 24, 2025. *Doc. 25*.  On April 3, 2025, Combs filed a brief in opposition the City Defendants' motion to dismiss. *Doc. 27*.  Due to Combs's status as a pro se prisoner, and without objection from the opposing parties, we consider this brief as timely filed.  The City Defendants' motion is now ripe for review.  Combs, however, neither filed a brief in opposition to Lackawanna County's motion to dismiss or requested an extension of time.  And that deadline has passed. Accordingly, we review Lackawanna County's motion to dismiss without the aid of a brief in opposition.

---

[2] We note that the page numbers automatically generated by ECF do not correspond to the page numbers written on the City Defendants' brief in opposition due to their inclusion of a table of contents.  In this report and recommendation, we cite to the ECF page numbers.

### III.  Motion to Dismiss Standards.

In accordance with Fed. R. Civ. P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss under Rule 12(b)(6) "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).

In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769–70 (M.D. Pa. 2012).  "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S.

89, 93 (2007).  Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. Cty. Of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)).  But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation.  In practice, consideration of the legal sufficiency of a complaint

entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead
> to state a claim."  Second, the court should identify allegations that,
> "because they are no more than conclusions, are not entitled to the
> assumption of truth."  Finally, "where there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and

citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).

A complaint filed by a *pro se* litigant is to be liberally construed and

"'however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers.'" *Erickson*, 551 U.S. at 94 (quoting *Estelle v.

Gamble*, 429 U.S. 97, 106 (1976)).  Nevertheless, "pro se litigants still must allege

sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina,

Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## IV.  Combs's Complaint.[3]

Combs seeks to bring an action under 42 U.S.C. § 1983, as well as state tort

law claims, relating to the defendants' actions.  He brings his claims against

Petrucci and Hyler, who he alleges are police officers employed by Lackawanna

---

[3] We cite to the numbered paragraphs that begin on page 12 of the
complaint. *Doc. 1* at 12–26.

County and the City of Scranton, as well as Lackawanna County and the City of

Scranton. *Id*. ¶¶ 7–8, 11.  Additionally, Combs names two John Doe defendants he

identifies as Scranton Internal Affairs Officer and Scranton Police Chief. *Id*. ¶¶ 9–

10.

     Combs's claims stem from a traffic stop, at which Combs alleges Petrucci

and Hyler illegally searched him, and the subsequent criminal proceedings as a

result of the drugs found during this search, in which he alleges Petrucci and Hyler

falsely testified.  On September 8, 2022, Combs was driving his car in Scranton,

Pennsylvania, when Petrucci and Hyler conducted a traffic stop of his vehicle. *Id*.

¶ 13.  This was the second time Combs had encountered Petrucci and Hyler during

a traffic stop. *Id*. ¶ 16.  The two officers approached the vehicle, with Hyler at the

drivers' side window and Petrucci at the passenger side window. *Id*. ¶ 14.  Petrucci

told Combs that he stopped his vehicle because of Combs's tinted windows and a

malfunctioning brake light. *Id*. ¶¶ 13, 15.  Petrucci told Combs, "Dude don't give

us a problem, if you do man we're not gonna give you a break, last time we gave

you a break, you're on state parole dude." *Id*. ¶ 15.  Petrucci instructed Combs to

get out of the vehicle so that he may issue a warning for the traffic violation. *Id*.

     When Combs exited the vehicle, Hyler requested permission to search

Combs's pockets. *Id*. ¶ 16.  Combs asked "why are we going through this again?,"

referring to the previous traffic stop. *Id*.  Hyler responded, "because I think you

have something illegal on you." *Id*.  Combs denied that he had anything illegal, but after "getting frustrated going back and forth" with Hyler, Combs gave permission to the search of his pockets. *Id*. ¶ 17.

Before searching his pockets, Hyler asked Combs what was on his shirt. *Id*. There were small particles on Combs's shirt, which Combs believes was "tobacco shake" from an unlit cigarette. *Id*.  However, Hyler and Petrucci both assumed and concluded that the particles were "spice and/or synthetic marijuana," a controlled substance. *Id*. ¶ 18.  Petrucci threatened to arrest Combs, saying "Do you want us to field test it? We will and then we'll arrest you with a parole violation." *Id*. Combs states that Petrucci was not his parole agent nor was he employed as a Pennsylvania State Parole Agent. *Id*. ¶ 19.  Combs's pockets were then searched and nothing illegal was found. *Id*. ¶ 20.

Hyler escorted Combs to the sidewalk and began questioning him with unrelated questions. *Id*.  Combs asked Hyler if he could have his ticket and go. *Id*. Hyler told him he could not "because now this is a drug investigation, because you have 'Spice' on your shirt." *Id*.  Hyler requested permission to search the vehicle and told Combs if he refused, he would call a K-9 Unit. *Id*. ¶ 21.  At this time, Petrucci began to pick the particles from Combs's shirt and bag them as evidence. *Id*. ¶ 21.  Combs claims that this action "drove home to [Combs] [Petrucci's]

earlier threat to arrest [Combs] with a parole violation if he made [Petrucci and Hyler] field test the particles from [Combs's] shirt." *Id.*

Despite not wanting to, Combs gave Petrucci and Hyler permission to search the vehicle because he took Petrucci's earlier threat to arrest him with a parole violation seriously. *Id.* ¶ 22. Combs was unable to fully observe the search because he was detained on the sidewalk out of view of the search. *Id.* ¶ 23. After the search, Petrucci showed Combs a clear plastic bag and stated "[t]here is 'Spice' on this bag, just so know, passenger side floor." *Id.* ¶ 24. Combs states that Petrucci knowingly lied when he said that the bag was found on the passenger side floor. *Id.*

Combs was released from the scene, and later charged pursuant to a criminal complaint with possession of a controlled substance under the 35 P.S.Ca. 780-113(a)(16) and drug paraphernalia under 25 P.S.Ca. 780-113(a)(32) in the Magisterial District Court 45-1-05, in Lackawanna County, Pennsylvania. *Id.* ¶ 25. The accompanying Affidavit of Probable Cause was completed by Petrucci and Hyler and states "Mr. Combs consented to a search of the vehicle and officer Petrucci recovered a clear plastic bag containing synthetic marijuana on the front passenger side floor." *Id.* ¶ 26.

Combs was to appear on November 18, 2022, for a preliminary hearing on the charges, but he failed to do so. *Id.* ¶ 28. Accordingly, a bench warrant was

issued for Combs's arrest. *Id.* ¶ 29.  On November 21, 2022, Combs was arrested, detained, and transported to court. *Id.* ¶ 30.  He was arraigned and released on a $1,000 unsecured bail. *Id.*  Combs again failed to appear at his next court hearing on December 5, 2022, so another bench warrant was issued for his arrest. *Id.* ¶ 31. Combs was arrested on December 30, 2022. *Id.*  This time a $500 unsecured bail was issued. *Id.* ¶ 32.

A preliminary hearing was held on February 7, 2023. *Id*. ¶ 33.  Petrucci testified at the hearing that "Yes, so we had recovered the synthetic marijuana from his shirt, asked him for consent to search the vehicle and he agreed[.] [W]e conducted a search of the vehicle, and on the front passenger side floor we recovered a clear plastic baggy containing synthetic marijuana." *Id*. ¶¶ 34–35. After the preliminary hearing, and as a result of Petrucci's testimony, the charges were bound over to the Lackawanna County Court of Common Pleas. *Id*. ¶ 36.  An Information was filed against Combs on March 23, 2023, charging him with one count of possession of a controlled substance under 35 P.S. 780-113(a)(16) and one count of drug paraphernalia under 35 P.S. 780-113(a)(32). *Id*. ¶ 37.  The case was filed under case number CP-35-CR-0000304-2023. *Id*.

On or about May 10, 2023, Combs was provided discovery for this criminal case, which included the body camera footage of both Petrucci and Hyler covering the search of Combs's vehicle. *Id*. ¶ 38.  The camera footage from Petrucci's

camera shows that Petrucci discovered and recovered the clear plastic bag containing synthetic marijuana from inside an unknown female's pocketbook that was in the vehicle, and not from the front passenger side floor. *Id.* ¶ 40. Specifically, Combs summarizes the video and alleges that the video shows Petrucci beginning to search the vehicle when he "locates a female pocketbook, searches that pocketbook on the vehicle driver's seat, finds and locates a clear plastic bag containing synthetic marijuana inside the pocketbook, tosses that clear plastic bag on the passenger side front seat, completed the search of the vehicle, and the[n] plants the illegal items from the pocketbook." *Id.* ¶ 46. Petrucci also failed to secure the pocketbook as evidence, which Combs describes as a *Brady* violation. *Id.* ¶¶ 42–43. Combs alleges that the pocketbook contained documents and identification of the owner, as well as prescription medication, so preservation of this item would have been relevant to a determination as to who the drugs and drug paraphernalia belonged. *Id.* ¶ 43. Combs further alleges that Petrucci and Hyler's suppression and/or attempt to destroy the existence of the pocketbook was done in bad faith and with the intent to gain a tactical advantage in the criminal process by hindering Combs's chance of learning the truth and preparing a defense. *Id.* ¶ 44.

On May 8, 2024, the criminal charges from case number CP-35-CR-0000304-2023, were *nolle prossed. Id.* ¶ 52.

Combs alleges that Petrucci and Hyler's conduct "was consistent with an institutionalized practice and/or unwritten policy of Lackawanna County, the City of Scranton, and the Scranton Police Department, which was known to and ratified by" defendants Petrucci, Hyler, John Doe Scranton Police Chief, Scranton Police Department, the City of Scranton, and Lackawanna County. *Id.* ¶ 54.  Combs also alleges that defendants John Doe Scranton Police Chief, John Doe Scranton Internal Affairs Officer, Scranton Police Department, the City of Scranton, and Lackawanna County "had prior notice of the propensities of [d]efendants Petrucci and Hyler to violate the rights of citizens, but took no steps to train them, correct their abuse of authority, or to discourage their unlawful use of authority." *Id.* ¶ 55; *see also id.* ¶ 56.

Combs alleges the defendants violated his First Amendment right to freedom of expression, his Fourth Amendment right to be free from unlawful, illegal detentions, searches and seizures of his person, false arrest and false imprisonment, and his due process rights regarding the destruction and suppression of evidence. *Id.* ¶ 59.  Combs also alleges his state law claims of unlawful detention, unlawful search and seizure, false arrest, false imprisonment, abuse of process and conspiracy against Petrucci and Hyler. *Id.* ¶ 60.  Combs seeks compensatory damages in the amount of $250,000 and punitive damages in the amount of $150,000. *Id.* ¶ 61.

## V.  Discussion.

Combs alleges that the defendants' conduct violated his constitutional rights and specifically mentions the First, Fourth, Fifth, and Fourteenth Amendments. *Doc. 1,* ¶¶ 2, 59.  These federal claims are brought under 42 U.S.C. § 1983. "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005).  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.*

As explained below, we find that Lackawanna County has been named as a defendant in error.  Moreover, as the City Defendants argue, Combs's allegations do not support a finding of municipal liability against the City of Scranton, nor are they sufficient to state a claim of any constitutional violation aside from Combs's claim of an illegal search.

### A.  Lackawanna County's Motion to Dismiss.

Lackawanna County argues that it should be dismissed as a defendant because it is clear from the "complaint and accompanying exhibits that Lackawanna County did not employ any of the Police Officers involved in the

Plaintiff's alleged civil rights violation nor did Lackawanna County have any nexus or any involvement in this matter." *Doc. 12* at 5.  Where a complaint names the wrong entity as a defendant, dismissal may be appropriate. *See Alexander v. Experian*, No. CV 23-2964, 2023 WL 8600221, at *1 (E.D. Pa. Dec. 12, 2023) (dismissing complaint for naming the wrong defendant in case regarding a disputed credit report where plaintiff sued Experian but allegations were that Equifax was responsible for the disputed credit report).  As Lackawanna County notes, when considering a motion to dismiss, in addition to the complaint, courts may consider "exhibits attached to the complaint and matters of public record." *Doc. 12* at 6 (citing *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Here, Lackawanna County states that upon review of "the complaint and exhibits, it is clear Lackawanna County had no nexus or connection to the" alleged civil rights violations. *Doc. 12* at 6.  Lackawanna County does not identify where in the complaint or attached exhibits it finds this clear contention.  To the contrary, the complaint alleges that Lackawanna County as well as the City of Scranton are employers of the police officers at issue. *Doc. 1* ¶¶ 7–10.  Lackawanna County's motion and brief in support does not address these allegations.  Moreover, Lackawanna County cannot prevail at the motion to dismiss stage by stating that the facts in the complaint are wrong, as the court "'must accept all facts alleged in

14

the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger,* 890 F.3d at 437 (quoting *Flora*, 776 F.3d at 175).

Nonetheless, Lackawanna County also states that the court can take into consideration matters of public record including that "there is no Lackawanna County Scranton Police Department." *Id*. While Lackawanna County does not point us to a public record that would support this contention, we may take judicial notice of the fact that Lackawanna County is a separate political subdivision from the City of Scranton. *See McDaniel v. City of Lewistown*, No. CIV.1:CV-09-00276, 2009 WL 2998060, at *4 (M.D. Pa. Sept. 16, 2009) (citing Fed. R. Evid. 201(b)). Moreover, the exhibits Combs attached to his complaint show that the arresting agency was the Scranton City Police Department and that both Petrucci and Hyler were employed by the Scranton City Police Department. *See, e.g., doc. 1-1* at 5 (containing the Affidavit of Probable Cause which states "On September 8, 2022 Officer James Petrucci and Officer Jason Hyler from the Scranton Police Street Crimes Unit were in full uniform and operating an unmarked police vehicle."); *doc*. 1-3 at 2 (stating that the arresting agency was the Scranton City Police Department).

Overall, we read Lackawanna County's motion as arguing that it was named as a defendant by mistake. Because Combs has not filed a brief in opposition and because the complaint read as a whole supports the contention that Lackawanna

County was named in error, we recommend dismissal of Lackawanna County as a

defendant.  Nonetheless, we recommend this dismissal be without prejudice and

with leave to amend if Combs believes he has a basis to allege Lackawanna

County was involved in any constitutional violation despite the fact that

Lackawanna County is a separate entity from the City of Scranton and, therefore,

does not employ Hyler and Petrucci.[4]

### B.  Combs Has Not Sufficiently Pleaded Facts to Support Municipal Liability Against the City of Scranton.

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the

Supreme Court held that local governments are "persons" and are subject to suit

under § 1983.  A municipality, such as the City of Scranton, cannot be held liable

for the unconstitutional acts of its employees on a theory of *respondeat superior*.

---

[4] Lackawanna County's brief in support of its motion to dismiss also states Combs's claims are barred by the statute of limitations. *Doc. 13* at 8.  The brief lacks any analysis on this argument.  Moreover, Combs's claims appear to have been timely filed within the applicable two year statute of limitations period pursuant to the prison mailbox rule. *See Moody v. Conroy*, 680 F. App'x 140, 144 (3d Cir. 2017) (stating, in a Section 1983 action, that "a pleading is deemed filed at the time a prisoner executes it and delivers it to prison authorities for mailing").  Combs's complaint was postmarked August 30, 2024, *doc. 1* at 26, which was within two years of the allegedly illegal search.  Moreover, as ongoing violations, malicious prosecution and fabrication of evidence claims do not accrue until the potential favorable termination of the plaintiff's prosecution. *McDonough v. Smith*, 588 U.S. 109, 117 (2019).  Combs's charges were *nolle prossed* on May 8, 2024, making that the earliest possible date for the statute of limitations to begin running on those claims.

*Monell,* 436 U.S. at 691.  Rather, "under § 1983, local governments are responsible only for 'their *own* illegal acts.' " *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original)).  "[A] § 1983 claim against a municipality may proceed in two ways." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019).  One way for a plaintiff to present a claim against a municipality is to allege "that an unconstitutional policy or custom of the municipality led to his or her injuries." *Id.*  Another way for a plaintiff to present a claim against a municipality is to allege that his injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Id.* (quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)).

To plead a claim against a municipality under the policy-or-custom strand of municipal liability, "a plaintiff must allege that 'a [local] government's policy or custom . . . inflict[ed] the injury' in question." *Estate of Roman*, 914 F.3d at 798 (quoting *Monell*, 436 U.S. at 694).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Id.* (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original) (internal quotation marks omitted)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or

authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

"To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). "Although a policy or custom is necessary to plead a municipal claim, it is not sufficient to survive a motion to dismiss." *Estate of Roman*, 914 F.3d at 798. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Id*.

Here, Combs has failed to allege any facts from which it can reasonably be inferred that a policy, custom, or practice of the City of Scranton resulted in a violation of his constitutional rights. Combs's complaint only states that the actions of Petrucci or Hyler were consistent with "an institutionalized practice and/or unwritten policy" of the City of Scranton. *Doc. 1* ¶ 54. He fails to include any allegations about what this practice or policy was, let alone any factual allegations to support a plausible inference that a municipal policy can be affirmatively linked to Petrucci and Hyler's actions.

Another way for a plaintiff to present a claim against a municipality is to allege that his or her injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Forrest*, 930 F.3d at 105 (quoting *Estate of Roman*, 914 F.3d at 798). "The latter avenue arose in the

failure-to-train context, but applies to other failures and inadequacies by municipalities, including those related to supervision and discipline of its . . . officers." *Id.*

A plaintiff asserting a municipal liability claim based on a failure or inadequacy of training, supervision, or discipline "need not allege an unconstitutional policy." *Estate of Roman*, 914 F.3d at 798. Rather, he must show that the municipality's failure to train, supervise, or discipline "its employees 'reflects a deliberate or conscious choice.'" *Id.* (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)). In this regard, the plaintiff must show "a failure or inadequacy amounting to deliberate indifference on the part of the municipality." *Forrest*, 930 F.3d at 106. "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

In addition to deliberate indifference, a plaintiff asserting a municipal liability claim based on a failure or inadequacy of training, supervision, or discipline must also allege causation. *Elliott v. Pennsylvania Interscholastic Athletic Assoc.*, No. 3:19-CV-01934, 2022 WL 987887, at *5 (M.D. Pa. Mar. 31, 2022). "[T]he causation inquiry focuses on whether 'the injury [could] have been

avoided had the employee been trained under a program that was not deficient in the identified respect." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 226 (3d Cir. 2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)).

Again, here, Combs, has not alleged any facts from which it can reasonably be inferred that a failure or inadequacy of training, supervision, or discipline by the City of Scranton caused a violation of his rights.  Combs's complaint merely states legal conclusions without any specific factual support.  For example, he states that the City of Scranton failed "to properly discipline, restrict, and control employees, including Defendants James Petrucci and Jason Hyler, known to be irresponsible in their dealings with citizens of the community." *Doc. 1 ¶* 56a.  However, he does not include any factual allegations to support a history of Hyler and Petrucci's irresponsible dealings, let alone that they were known to the City of Scranton and the City of Scranton failed to act.  Thus, we recommend that Combs's claims under § 1983 should be dismissed against the City of Scranton for failure to state a claim.

### C.  Combs's § 1983 Claims Against Petrucci and Hyler.

Combs's complaint alleges that the actions of Petrucci and Hyler violated his Fourth, Fourteenth, First, and Fifth Amendment rights.  These claims are properly brought pursuant to 42 U.S.C. § 1983, as discussed above.

20

### 1. Fourth Amendment Claims.

The Fourth Amendment states, in pertinent part, that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. CONST. Amend. IV. Combs explicitly brings claims of illegal search and seizure, false arrest, and false imprisonment under the Fourth Amendment. *Doc. 1* ¶ 59. Combs's complaint, read liberally, also appears to be bringing a claim of malicious prosecution under the Fourth Amendment. *See, e.g., doc. 1* ¶ 44 (alleging that Petrucci and Hyler's actions were done in bad faith and to gain advantage in the criminal process by destroying evidence).

Petrucci and Hyler argue that Combs's "malicious prosecution, unlawful detention, search and seizure . . . and false arrest claims are barred by the favorable termination rule of *Heck v. Humphrey*[,]" 512 U.S. 477 (1994). *Doc. 22* at 22 (capitalization altered). It is true that "[t]o maintain [certain] Fourth Amendment claim[s] under § 1983, a plaintiff . . . must demonstrate, among other things, that he obtained a *favorable termination* of the underlying criminal prosecution." *Thompson v. Clark*, 596 U.S. 36 (2022)

Petrucci and Hyler concede, however, that "the charges at issue were nolle prossed." *Id.* To bolster their argument, Petrucci and Hyler cite Third Circuit case law that held that a plaintiff must demonstrate innocence to satisfy the favorable

termination rule. *Id.* (citing *Hector v. Watt*, 235 F.3d 154, 156 (3d Cir. 2000).

Petrucci and Hyler do not cite, however, the much more recent Supreme Court

decision on this very matter: *Thompson v. Clark*, 596 U.S. 36 (2022).  In

*Thompson*, the Court held that "[t]o demonstrate a favorable termination of a

criminal prosecution for purposes of" satisfying the favorable termination rule "a

plaintiff need only show that his prosecution ended without a conviction." *Id.* at

39.  This includes when prosecutors choose to drop charges. *See generally id.*

Accordingly, we do not recommend dismissing any of Combs's claims based on a

failure to demonstrate a favorable termination of his criminal prosecution.


### a.  Illegal Search.

Combs's encounter with Hyler and Petrucci on September 8, 2022, began

with a traffic stop, which was later expanded to include a search of his person and

his car.  The Fourth Amendment prohibits "unreasonable searches and seizures."

U.S. Const. amend. IV.  "Generally, for a seizure to be reasonable under the Fourth

Amendment, it must be effectuated with a warrant based on probable cause."

*United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012) (quoting *United States v.

Robertson,* 305 F.3d 164, 167 (3d Cir. 2002)).  Warrantless searches are *per se*

unreasonable subject to only a few specifically established and well delineated

exceptions. *Horton v. California,* 496 U.S. 128, 133 (1990).

One well-established exception to the warrant requirement allows "an officer to 'conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *Lewis*, 672 F.3d at 237 (quoting *Illinois v. Wardlow,* 528 U.S. 119, 123 (2000)). "When determining whether an officer possessed reasonable suspicion to conduct a traffic stop, we must consider the totality of the circumstances." *Id.* (citing *United States v. Silveus,* 542 F.3d 993, 1000 (3d Cir. 2008)). Once a valid traffic stop is initiated, "an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation." *United States v. Givan,* 320 F.3d 452, 458 (3d Cir. 2003) (citation omitted).

Moreover, the automobile exception allows an officer to search a vehicle without a warrant provided he has "probable cause to believe that the vehicle contains evidence of a crime." *United States v. Donahue*, 764 F.3d 293, 299–300 (3d Cir. 2014); *see also, United States v. Thompson*, 545 F.App'x 167, 170 (3d Cir. 2013) ("The automobile exception permits police to search and seize a vehicle so long as they have probable cause to believe that the vehicle contains contraband or evidence of a crime") (citing *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996)). The probable cause for searching the vehicle "justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Donahue*,

764 F.3d at 300 (3d Cir. 2014) (quoting *United States v. Ross,* 456 U.S. 798, 825 (1982)).  "The probable cause inquiry is 'commonsense,' 'practical,' and 'nontechnical;' it is based on the totality of the circumstances and is judged by the standard of 'reasonable and prudent men.'" *Donahue*, 764 F.3d at 301 (quoting *Illinois v. Gates,* 462 U.S. 213, 230–31 (1983)).  "If there was a 'fair probability that contraband or evidence of a crime' would have been found, there was probable cause for the search." *Id.*

Combs does not allege that the initial traffic stop was unlawful; rather he states that he was told he was stopped due to tinted windows and a malfunctioning brake light. *Doc. 1* ¶ 15; *see also United States v. Bonner,* 363 F.3d 213, 216 (3d Cir. 2004) ("It is well established that officers are permitted to pull over a car suspected of violating any applicable vehicular traffic laws.").  Moreover, as the traffic stop itself was justified, Petrucci's request that Combs step out of his vehicle so that Petrucci may issue a warning for the traffic violation was permissible as "police officers [have] unbridled discretion to order drivers out of their cars during traffic stops in the name of officer safety." *United States v. Hunter*, 88 F.4th 221, 226 (3d Cir. 2023); *Pennsylvania v. Mimms,* 434 U.S. 106 (1977).

After this point, however, Combs argues that the search of his person and vehicle were unjustified.  The City Defendants primarily argue that their actions

were reasonable after the initial stop because they claim Petrucci smelled marijuana emanating from the vehicle while speaking to Combs at the start of the stop. However, this factual allegation does not appear in Combs's complaint. The City Defendants argue they can rely on this fact because Combs attached the transcript of the February 7, 2023 preliminary hearing from Combs's criminal case in which Petrucci stated that upon approaching the vehicle: "[w]hile speaking with Mr. Combs, we had smelled a strong odor of synthetic marijuana coming from inside the vehicle." *Doc. 22* at 28 (citing *Doc. 1-5* at 9). We do not agree that we can rely on this statement as fact for purposes of a Rule 12(b)(6) motion. While the fact Petrucci said that statement at the preliminary hearing is clearly part of the complaint and may be considered, we may not "examine a transcript of a prior proceeding to find facts [without] convert[ing] [the] motion to dismiss into a motion for summary judgment." *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.,* 181 F.3d 410, 427, n7 (3d Cir. 1999). Moreover, taking this testimony as part of the factual allegations here would be especially inappropriate considering that Combs attached the transcript to support his contention that Petrucci lied on the stand at this hearing. Accordingly, whether a smell of marijuana emanated from the vehicle will not be considered.

We also find that Combs has alleged that, while he consented to the searches, his consent was coerced. Specifically, Combs alleges he agreed to the

search of his pockets out of "frustrat[ion] with going back and forth with . . . Hyler as to whether or not [Combs] had something illegal on him[,]" and that he only agreed to the search of his vehicle because he took seriously Petrucci's "earlier illegitimate threat to arrest [Combs] with a parole violation[.]" *Doc. 1* ¶¶ 17, 22. We conclude that Combs's allegations of coercion are sufficient to overcome a dismissal based on consent to search at this early stage of review. *See United States v. Drayton*, 536 U.S. 194, 201 (2002) (noting that law enforcement officers can pose questions and ask for consent to search individuals even without a basis for suspecting a particular individual "provided they do not induce cooperation by coercive means").[5]

Even without consent to search, however, Petrucci and Hyler could still search Combs as long as they had probable cause to do so. *See Thompson*, 545 F.App'x at 170 ("The automobile exception permits police to search and seize a vehicle so long as they have probable cause to believe that the vehicle contains contraband or evidence of a crime") (citing *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996)).  Here, Petrucci and Hyler observed particles on Combs's shirt which Petrucci and Hyler assumed were synthetic marijuana. *Doc. 1* ¶ 18.  But the

---

[5] We also note that Combs's complaint highlights Hyler's comments which indicated that their motivation for stopping Combs was because they were trying to catch Combs violating his probation.  However, the constitutional reasonableness of a traffic stop does not depend on the subjective motivations of the individual officers. *Whren v. United States,* 517 U.S. 806, 813 (1996).

presence of unknown particles alone was insufficient to support probable cause.

*See, e.g., Tobin v. Cherry*, No. 1:20-CV-02320, 2022 WL 3107929, at *5 (M.D.

Pa. Aug. 4, 2022) (finding the "mere presence of a grassy substance on a motorist's

clothing" is not sufficient to provide reasonable suspicion for an investigatory

detention).

Accordingly, we recommend the court allow Combs's illegal search claims

to proceed against Petrucci and Hyler.


### b.   False Arrest.

"To state a claim for false arrest under the Fourth Amendment, a plaintiff

must establish: (1) that there was an arrest; and (2) that the arrest was made

without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir.

2012).  "The probable-cause standard is incapable of precise definition or

quantification into percentages because it deals with probabilities and depends on

the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371

(2003).  "Probable cause to arrest exists when the facts and circumstances within

the arresting officer's knowledge are sufficient in themselves to warrant a

reasonable person to believe that an offense has been or is being committed by the

person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d

Cir. 1995).  An "officer may draw inferences based on his own experience in

deciding whether probable cause exists." *Ornelas v. United States*, 517 U.S. 690, 700 (1996).

Here, Combs has not alleged he was arrested on the date of the traffic violation. The only arrests he alleges occurred were pursuant to bench warrants that were issued after each time he failed to appear for his scheduled court hearings. And, the bench warrants—which Combs concedes were validly issued for his failures to appear—provided the necessary probable cause for those arrests. *See In re Grand Jury Proceedings Harrisburg Grand Jury 79-1*, 658 F.2d 211, 214 (3d Cir. 1981) ("The simple fact of nonappearance provided the government with probable cause to apply for a bench warrant . . .The authority of a court to issue bench warrants to arrest [persons] who fail to appear is, in fact, unquestioned."); *Lear v. Phoenixville Police Dep't*, 734 F. App'x 809, 812 (3d Cir. 2018). Accordingly, we recommend dismissal of Combs's false arrest claim.

### c. False Imprisonment.

"To state a claim for false imprisonment, a plaintiff must establish: (1) that []he was detained; and (2) that the detention was unlawful." *James*, 700 F.3d at 682–83. "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Twp. of Manalapan,* 47 F.3d 628, 636 (3d Cir. 1995).

Liberally reading the complaint, Combs alleges that he was detained during the traffic stop.  Specifically, Combs alleges that "[a]fter conducting a search of [his] pockets, which turned up nothing illegal, . . . Hyler escorted [Combs] to the sidewalk away from the vehicle for questioning *unrelated to the traffic stop*." *Doc. 1 ¶ 20* (emphasis added).  According to Combs, he asked Hyler "may he please get his ticket and go," and Hyler responded "No, because now it's a drug investigation, because you have 'Spice' on your shirt." *Id.*  "Hyler then requested permission to search the vehicle and stated that if [Combs] refused he would call a K-9 Unit." *Id.* ¶ 21.

"[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. U.S.*, 575 U.S. 348, 350 (2015).  "A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonable required to complete th[e] mission' of issuing a ticket for the violation." *Id.* at 350–51.

Here, Petrucci and Hyler have not argued anything in regard to the traffic stop being prolonged after the search of Combs's pockets and prior to the search of Combs's automobile.  Petrucci and Hyler argue that the search of the automobile was justified by reasonable suspicion based on the officers smelling marijuana—which, as described above, cannot be considered at this stage of review.  At this

early stage of review, without full briefing regarding the events surrounding Combs's questioning on the sidewalk prior to the request to search his car, we recommend that the court deny Petrucci and Hyler's motion to dismiss Combs's False Imprisonment claim based on the extension of his traffic stop.

### d. Malicious Prosecution.

To state a malicious prosecution claim under the Fourth Amendment, the plaintiff must "show that: '(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendants initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) he suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.'" *Geness v. Cox*, 902 F.3d 344, 355 (3d Cir. 2018) (quoting *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017)); *see also, Albright v. Oliver*, 510 U.S. 266, 275 (1994) (finding that pretrial deprivations of liberty, including claims of malicious prosecution, arise under the Fourth Amendment). The City Defendants argue that Combs has not stated a claim for malicious prosecution because he has not shown the criminal proceeding ended in his favor (the second element) and he has not shown that he suffered a seizure as a result of

the proceeding (the fifth element). *Doc. 22* at 24–25.  As discussed above, we find

that Combs has met the second element, alleging that the claims ended in his favor.

The City Defendants also argue that Combs has not pleaded the fifth element

of a malicious prosecution claim because he has not pleaded the existence of a

seizure. *Doc. 18* at 17–22.  "Pretrial custody and some onerous types of pretrial,

non-custodial restrictions constitute a Fourth Amendment seizure." *DiBella v.

Borough of Beachwood*, 407 F.3d 599, 602 (3d Cir. 2005).  A requirement that a

plaintiff attend a trial is not sufficient because "[t]he type of constitutional injury

the Fourth Amendment is intended to redress is the deprivation of liberty

accompanying prosecution, not prosecution itself." *Id.* at 603 (citing *Albright v.

Oliver*, 510 U.S. 266 (1994)).

Accordingly, the Third Circuit has found no seizure for purposes of a

malicious prosecution claim where the plaintiff was only issued a summons and

required to attend his or her trial, but was never arrested, never posted bail, was

free to travel, and did not have to report to Pretrial Services. *Id.* at 603; *see also

Laufgas v. Patterson*, 206 F. App'x 196, 198 (3d Cir. 2006) (A plaintiff's "required

attendance at various hearings and ultimate bench trial" do not amount to a seizure

without any mention of other onerous types of pretrial non-custodial restrictions).

However, a seizure was found where the plaintiff had to post a $10,000 bond,

attend court hearings, contact Pretrial Services on a weekly basis, and was

prohibited from travelling outside of two states. *Gallo v. City of Philadelphia*, 161 F.3d. 217, 222 (3d Cir. 1998).  The Third Circuit has also found a seizure where the plaintiff was required to post an unsecured bail of $50,000 and told the bond would be forfeited if she did not attend all court proceedings, was required to travel from California to Pennsylvania and incur associated costs because she did not live in the jurisdiction. *Black v. Montgomery Cnty.,* 835 F.3d 358, 367 (3d Cir. 2016), *as amended* (Sept. 16, 2016).

Prior to his arrests for failure to appear, Combs's alleged pre-trial restrictions appear no different than the ones that the Third Circuit found insufficient in *DiBella*.  Combs was released from the scene and later charged via a criminal complaint. *Doc. 1* ¶ 25.  Combs alleges no restrictions other than a requirement that he attend his preliminary hearing on November 18, 2022. *Id.* ¶ 28.

Moreover, Comb's two arrests for failure to appear do not qualify as a seizure for purposes of his malicious prosecution claim.  This is because Combs's arrests were not due to the commencement of the legal proceedings, but rather due to the bench warrants being issued after he failed to appear. *See also Thompson-El v. Twp. of Green Brook*, No. CV 19-14253 (GC) (TJB), 2024 WL 4850809, at *7 (D.N.J. Nov. 21, 2024) ("When a defendant is named in a bench warrant, probable cause for arrest exists, and any Fourth Amendment argument arising out of the arrest is without merit even if the bench warrant later turns out to be invalid.")

(quoting *Jones v. Gloucester Cty.*, Civ. No. 08-614, 2009 WL 10727989, at \*6 (D.N.J. Sept. 30, 2009)); *Ryu v. Whitten*, 684 F. App'x 308, 311 (4th Cir. 2017) (holding that "[a] summons requiring no more than a court appearance, without additional restrictions, does not constitute a Fourth Amendment seizure," and a later arrest for a failure to appear for that summons does not violate the Fourth Amendment even if the summons was negligently issued). It is true, of course that Combs's arrests were related to the legal proceeding—had there been no legal proceeding initiated against him, there would have been no hearing to fail to attend. However, his arrests were not "as a consequence of" the proceeding but because of Combs's intervening decisions to disregard the legal proceedings. Accordingly, we find that Combs has also not stated a claim of malicious prosecution because he has not alleged he has "suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.'" *Geness*, 902 F.3d at 355.

We recommend dismissal of Combs's malicious prosecution claim for failure to plead sufficient facts to allege a seizure as a result of the legal proceedings.

## 2. Fourteenth Amendment Due Process Claims.

Combs also alleges his Fourteenth Amendment due process rights were violated when defendants fabricated evidence and committed *Brady* violations. We find his factual allegations are insufficient to bring either claim.

### a. Fabrication of Evidence.

The Fourteenth Amendment's due process clause includes a stand-alone claim for fabrication of evidence separate from a malicious prosecution claim under the Fourth Amendment. *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014). Neither a conviction nor a trial is necessary to bring a fabricated evidence claim under the due process clause. *Black v. Montgomery Cnty.*, 835 F.3d 358, 372 (3d Cir. 2016), *as amended* (Sept. 16, 2016) (noting that were the result otherwise "the ineffective fabricator of evidence" would be insulated and "only the skillful fabricator" would be held accountable). However, a plaintiff must "draw a 'meaningful connection' between [his] particular due process injury and the use of fabricated evidence against [him]." *Id.* The plaintiff must also "demonstrate that the fabricated evidence 'was so significant that it could have affected the outcome of the criminal case.'" *Id.* (quoting *Halsey,* 750 F.3d at 295). However, "[e]vidence is not fabricated if it 'is incorrect or simply disputed.'" *Mervilus v. Union Cnty.,* 73 F.4th 185, 194 (3d Cir. 2023) (quoting *Halsey*, 750 F.3d. at 295).

34

Rather, a plaintiff must show through persuasive evidence that the defendants "formulated or submitted false evidence willfully, knowingly, or with a reckless disregard for its truth." *Id.* at 194–95.

The City Defendants argue that the story told by the body cam versus the abbreviated story told by Petrucci was not sufficient to "demonstrate that the fabricated evidence 'was so significant that it could have affected the outcome of the criminal case.'" *Black,* 835 F.3d at 372.  Combs does not dispute that the synthetic marijuana was found in a pocketbook *in his car*, in which there were no other passengers.  So, as the City Defendants argue, a prosecution could still have proceeded based on a theory of constructive possession. *See Commonwealth v. Macolino,* 469 A.2d 132, 134 (1983) (defining constructive possession under Pennsylvania law as "the ability to exercise a conscious dominion over the illegal substance: the power to control the contraband and the intent to exercise that control" which "may be inferred from the totality of the circumstances"); *Commonwealth v. Johnson,* 26 A.3d 1078, 1093 (2011) ("[C]onstructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement.").  We disagree, however, that the analysis is as cut and dry as the City Defendants contend: the constructive possession case against Combs would be much stronger had the plastic bag been found on the passenger side floor rather than in another individual's pocketbook.  As Combs states, the

"female pocketbook [] would have contained documents and identification of the owner, as well as prescription medication," which could have been used to determine the owner of the pocketbook and, thus, the drugs and drug paraphernalia. *Doc. 1* ¶¶ 43–44.

At this juncture, we recommend the court not grant the City Defendants' motion to dismiss insofar as it seeks the dismissal of Combs's fabrication of evidence claim.

### b. *Brady v. Maryland*, 373 U.S. 83 (1963).

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The Third Circuit has assumed that such a claim can be brought against police officers under § 1983 as they have an affirmative duty to disclose exculpatory evidence by, at a minimum, informing the prosecutor of its existence. *Smith v. Holtz*, 210 F.3d 186, 197 (3d Cir. 2000) (citing *McMillian v. Johnson*, 88 F.3d 1554, 1567 n. 12 (11th Cir.1996), *amended*, 101 F.3d 1363 (11th Cir.1996)). However, "[n]o denial of due process occurs if *Brady* material is disclosed to [a defendant] in time for its effective use at trial." *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983). Because the allegedly exculpatory evidence from Petrucci's bodycam was promptly turned over to

Combs and would have been available for effective use at a trial had he had one, Combs cannot state a claim for a *Brady* violation.  We recommend dismissal of Combs's *Brady* claim.

### 3. First Amendment Claim.

Combs also mentions the First Amendment as a basis for his claims, but he does not elaborate on what violation of his rights occurred with respect to this amendment.  Combs's complaint can be read to contain a general inference that Hyler and Petrucci had an animus against him. *See e.g., doc. 1* ¶¶ 15–16. However, if Combs intended to bring a retaliation claim under the First Amendment, he has failed to state a claim.  To state a retaliation claim, plaintiffs must show " (1) that they engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted).  Here, Combs has not alleged that any action of the defendants was motivated by Combs's engagement in a constitutionally protected activity.  Accordingly, we recommend dismissing Combs's First Amendment claim.

### 4.  Fifth Amendment Claim.

Finally, Combs mentions the Fifth Amendment as a basis for his claims, but again does not elaborate on what violation of his rights occurred with respect to this amendment.  To the extent Combs sought to bring his malicious prosecution claim or due process claims under the Fifth Amendment, he has not stated a claim.

The Fifth Amendment's protection of due process only applies to the federal government and not to local governments or officials. *Nguyen v. U.S. Catholic Conf.*, 719 F.2d 52, 54-55 (3d Cir. 1983); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) ("[T]he due process clause under the Fifth Amendment only protects against federal governmental action and does not limit the actions of state officials").  Since Combs's complaint seeks to sue local governments and officials, the Fifth Amendment's due process protections are inapplicable.  Accordingly, we recommend dismissal of his Fifth Amendment claim.

### C.  State Law Claims.

The City Defendants have not addressed Combs's state law claims, as they did not find Combs's complaint to be bringing state law claims. *See doc. 22* at 16, n.2.  However, we note that Combs's complaint states he is asserting state law claims for unlawful detention, unlawful search and seizure, false arrest, false imprisonment, abuse of process and conspiracy against Petrucci and Hyler. *Doc. 1*

38

¶ 60.[6]  Such claims fall within the court's supplemental jurisdiction. 28 U.S.C.

§ 1367.  Since the defendants have not sought to dismiss these claims, we merely

note that they remain.


## VI.  Leave to Amend.

Before dismissing a complaint for failure to state a claim upon which relief

may be granted, a court must grant the plaintiff leave to amend, unless amendment

would be inequitable or futile. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224,

245 (3d Cir. 2008) (citing *Grayson v. Mayview State Hospital*, 293 F.3d 103, 114

(3d Cir. 2002)).  Here, because of the liberal amendment standard, we recommend

granting Combs an opportunity to file an amended complaint to address the

deficiencies with the dismissed claims.

If Combs decides to file an amended complaint, we note that any amended

complaint must be titled as an second amended complaint and must contain the

docket number of this case. Fed. R. Civ. P. 10(a).  "[A]ny amended complaint must

be complete in all respects." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa.

1992).  "It must be a new pleading which stands by itself as an adequate complaint

without reference to the complaint already filed." *Id*.  "In general, an amended

---

[6] Combs only states he is bringing these claims against Petrucci and Hyler,
not the City or County.

pleading supersedes the original pleading and renders the original pleading a

nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019). "Thus, the

most recently filed amended complaint becomes the operative pleading." *Id*. In

other words, if an amended complaint is filed, the original complaint will have no

role in the future litigation of this case.

Any amended complaint must also comply with the pleading requirements

of the Federal Rules of Civil Procedure, including the requirements that the

complaint contain "a short and plain statement of the grounds for the court's

jurisdiction," "a short and plain statement of the claim," and "a demand for the

relief sought." Fed. R. Civ. P. 8(a)(1)–(3). Further, "[e]ach allegation must be

simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "A party must state its claims

or defenses in numbered paragraphs, each limited as far as practicable to a single

set of circumstances." Fed. R. Civ. P. 10(b). And to the extent it would promote

clarity to do so, "each claim founded on a separate transaction or occurrence . . .

must be stated in a separate count." *Id*.

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a

'short and plain statement of the claim showing that the pleader is entitled to

relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P.

8(a)(2)). The statement required by Rule 8(a)(2) must give the defendant fair

notice of the nature of the plaintiff's claim and of the grounds upon which the

claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to 'show' such an entitlement with its facts." *Id.*

 "Fundamentally, Rule 8 requires that a complaint provide fair notice of 'what the . . . claim is and the grounds upon which it rests.'" *Garrett*, 938 F.3d at 92 (quoting *Erickson*, 551 U.S. at 93). Combs should not assume that the court and the defendants are aware of the events at issue; rather, he should draft any amended complaint "as if [he] were telling a story to people who knew nothing about [his] situation." *Wrhel v. United States*, No. 16-CV-758-JDP, 2017 WL 4352088, at *2 (W.D. Wis. Sept. 29, 2017).

## VII. Recommendations.

 For the foregoing reasons, we recommend that the court grant Lackawanna County's motion to dismiss (*doc. 12*) and grant in part and deny in part the City Defendants' motion to dismiss (*doc. 18*). Specifically, we recommend denying the City Defendants' motion to dismiss insofar as it seeks dismissal of Combs's illegal

search, false imprisonment, fabrication of evidence, and state law claims against Petrucci and Hyler.  And we recommend granting the motion to dismiss insofar as it seeks the dismissal of Combs's false arrest, malicious prosecution, *Brady*, First Amendment, and Fifth Amendment claims against Petrucci and Hyler.  We recommend granting the motion to dismiss insofar as it seeks dismissal of all claims against the City of Scranton.  We further recommend that Combs be granted leave to amend his complaint.

Should our recommendation be adopted, prior to any amended complaint being filed, the claims that remain would be Combs's claims against Hyler and Petrucci of illegal search, false imprisonment based on the extension of his traffic stop, fabrication of evidence, and his state law claims.  His claims against the John Doe defendants would also remain at this juncture.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The

judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 3rd day of July 2025.

**_S/ Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge